ON RETURN TO REMAND
McMILLAN, Judge.
This cause was remanded to the trial court with instructions to hold a hearing to determine the proper amount of restitution to be paid by the appellant, in accordance with *662 §§ 15-18-65 through -77, Code of Alabama 1975. 624 So.2d 659 (Ala.Cr.App.1992). The appellant had alleged that the trial court’s award of $25,000 in restitution constituted an abuse of discretion but, based on the record, this court was unable to make a determination on the adequacy of the award.
On remand, a hearing was held. The only witness was the appellant. The trial court questioned the appellant as to where he worked, how much he made, where he lived, and his age. The trial court also ascertained that the appellant had graduated from high school and was in good health. It determined that the appellant had been ordered to pay $200 a month until the total $25,000 was paid. The record indicates that at the time of the hearing the appellant had been complying with that order. The trial court asked defense counsel if the victim had left any children, and defense counsel responded that he did not. Moreover, defense counsel indicated that the State “never clearly established even that [the victim] was working. ... I think it became clear [during trial] that he was a drug pusher.” Defense counsel testified that the restitution was being paid to the victim’s mother and that she had incurred approximately $4,000 in funeral expenses, which had been paid by the crime victims’ fund. Defense counsel further responded that the appellant was not ordered to reimburse the crime victims’ fund, but was rather ordered to pay the family of the deceased $25,000.
The following then transpired:
“THE COURT: Let me ask you this; doesn’t a mother and father have some reasonable expectation from a child’s earnings at some time?
“[DEFENSE COUNSEL]: I don’t think so, Judge. I don’t think my mother has any expectation that I’ll support her. “THE COURT: You need to go across the street and tell them that over there. Tell the trial lawyers that.... In other words if somebody is grown then the mother and father can’t bring a suit if they are the next of kin? Is that what you were telling me the law is?
“[DEFENSE COUNSEL]: Your Honor, they can bring a suit.
“THE COURT: And they collect on it.
“[DEFENSE COUNSEL]: There was no evidence whatsoever that came out of the trial, no indication whatsoever that this family — and they’re not a poor family. I think one daughter works at the bank and the other—
“THE COURT: So the rich folks ought not sue?
“[DEFENSE COUNSEL]: No. We have a situation where this guy was not providing for anybody. And this family is going to get $25,000.
[[Image here]]
“[DEFENSE COUNSEL]: [T]hey can certainly get their funeral expenses. But the Crime Victims Restitution Act paid that.”
Thereafter, the trial judge explained his reasoning in setting restitution at this amount. The trial judge stated that he was extremely lenient in sentencing the appellant to a month in jail, with 15 years’ probation for his manslaughter conviction. He noted that the appellant had a wife and small children and stated:
“I had a choice to put him in jail and let people do without. I thought it would be more productive ... to let him out and let him pay some money. Number one, the money serves to remind him weekly, if not daily, what he did. Number two, I am not Solomon. I can’t speculate that [the victim] would have never given anything to his family. But he had one. They didn’t leave him out there for the buzzards. And I’ve heard nothing — I might reduce his payments and I will reword my order where the total sum of restitution is still $25,000. I will order $4,000 to the crime victims’ [fund] to reimburse them. And I’m ordering him to continue making payments on the balance of $21,000 to that family.”
The record indicates that the trial court thereafter reduced the appellant’s payments to $150 toward the balance of $21,000 to be paid to the family and $4,000 to be paid to the Crime Victims’ Fund.
*663 In Ex parte Clare, 456 So.2d 357 (Ala.1984), the Alabama Supreme Court discussed the type of damages that may be included in a restitution order, as follows:
“The Code authorizes the trial court, as a condition of probation, to order the defendant to
“ ‘[m]ake reparation or restitution to the aggrieved party for the damage or loss caused by this offense in an amount to be determined by the court....
“Code 1975, § 15-22-52(8). The Code defines ‘restitution’ as:
“ ‘[flull, partial or nominal payment of pecuniary damages to the victim or to its equivalent in services performed or work or labor done for the benefit of the victim as determined by the court of record,’
“while also defining ‘pecuniary damages’ as:
“ ‘[a]ll special damages which a person shall recover against the defendant in a civil action arising out of the facts or events constituting the defendant’s criminal activities.... ’
“Code 1975, § 15-18-66 (1982 Repl.Vol).
“The Court of Criminal Appeals states that included in the concept of special damages is the right to receive punitive damages. This, however, is incorrect. The purpose of the above-cited statute, as announced by the legislature, is to ensure:
“ ‘... that all perpetrators of criminal activity or conduct be required to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury, as a direct or indirect result thereof....’ (Emphasis added in Clare ].
“Code 1975, § 15-18-65 (1982 Repl.Vol.). The special damages, then, are based on the theory of compensation. In Birmingham Waterworks Co. v. Keiley, The Court of Appeals discussed the issue of damages, and stated:
“ ‘Actual damages are recoverable at law, out of a wrongdoer by the injured party as a matter of right as compensation for the actual loss sustained by him by reason of such wrong. Punitive damages are damages over and above such sum as will compensate a person for his actual loss, and the law permits their imposition, in proper cases, at the discretion of the jury, not because the party injured is entitled to them as matter of right, but as punishment to the wrongdoer, and to deter him and others in similar business from such wrongdoing in the future.’
“2 Ala.App. 629, 637, 56 So. 838, 841 (1911), citing Oliver v. Columbia, N. & L. R. Co., 65 S.C. 1, 43 S.E. 307 (1902). The legislative intent of the restitution statute is to compensate, and not to punish. We, therefore, hold that the special damages that the victim is entitled to in this case are limited to an amount which fully compensates the victim, and these damages may not be punitive in nature.”
Id. at 358.
It is clear that the purpose of a restitution hearing is to arrive at a precise amount of restitution due a victim because of a defendant’s acts, so that the victim may be fully compensated. The purpose is not to punish the defendant. Because the purpose of these hearings is to compensate, evidence must be presented concerning the exact nature of the victim’s damage or loss.
“We agree with the defendant that he was entitled to a hearing, at which legal evidence was introduced, in order to determine the precise amount of restitution due the victim in this ease. Sections 15-18-67 and -69, Code of Alabama 1975, provide the following:
“ ‘When a defendant is convicted of a criminal activity or conduct which has resulted in pecuniary damages or losses to a victim, the court shall hold a hearing to determine the amount or type of restitution due the victim or victims of such defendant’s criminal acts.... [T]he court shall order that the defendant make restitution or otherwise compensate such victim for any pecuniary damages....
[[Image here]]
“In addition, Rule 10(a)(5), Ala.R.Crim.P.Temp., provides that the amount of restitu *664 tion due the victim ‘shall be determined by the court from evidence presented at the sentence hearing if not stipulated by the parties;’ ”
Henry v. State, 468 So.2d 896, 901 (Ala.Cr.App.1984), writ denied, 468 So.2d 902 (Ala.1985) (emphasis added in Henry). In Henry v. State, a burglary case, this court remanded the cause to the trial court to conduct a restitution hearing to determine the exact value of the stolen property, although, at sentencing, the Auburn Police Department had presented the court with a “Restitution Form,” itemizing the victim’s losses, and valuing the stolen property at $2,356. This court stated, “We entertain no doubt as to the integrity of the Auburn Police Department’s valuation of the stolen property; however, the ‘Restitution Form’ as presented to the court was not legal evidence without accompanying testimony regarding the manner in which the values were determined.” 468 So.2d at 901. Thus, this case demonstrates the precision and specificity required in proving the exact amount of loss and, hence, the amount of restitution.
Similarly, in Patzka v. State, 481 So.2d 438 (Ala.Cr.App.1985), this court vacated the trial court’s order of restitution, where the defendant, who was convicted of engaging in deviate sexual intercourse with another inmate by forcible compulsion, was ordered to pay $100,000 in restitution. This court held that the trial court’s order of restitution was improper based on the following colloquy between the trial court, prosecutor, and defense counsel;
“‘MS. EMFINGER [ASSISTANT DISTRICT ATTORNEY]: The State represents that there is no restitution owed to the victim in this case.
MR. BLANCHARD [DEFENDANT’S ATTORNEY]: The Defense concurs with that.
“THE COURT: Does the State question or deny any of the testimony presented by the State itself in the trial of this case?
“MS. EMFINGER: Do we deny it?'
“THE COURT: Yes.
“MS. EMFINGER: No, sir.
“THE COURT: Does the State consider the forceful sodomy as not a torturous act to cause of action and wish to ask for damages?
“MS. EMFINGER: Yes, sir, but we would say that as far as we ... we’re not going to speculate on damages. As far as actual damages, Mr. Gillis and I have conferred with him and we have conferred with the victim and there are none.
“THE COURT: By speculative damages, do you mean punitive damages and by actual damages you mean bills submitted by hospitals or something of that nature?
“MS. EMFINGER: Yes, sir.
“THE COURT: All right. On the basis of the evidence presented by the State in the trial of this case I do direct that you pay to the victim in this case a sum of $100,000 as damages for the forceful sodomy committed on him.... ”
Patzka v. State, supra at 443. This court held that the amount of restitution had not been properly determined by the trial court in that case under the guidelines established in Ex parte Clare, supra.
Thus, although as noted by the trial court and defense counsel, the exact pecuniary loss to a parent caused by the murder of a son is difficult to compute, the funeral expenses in the present case constituted the only direct evidence of any pecuniary loss to the victim’s mother. Cf. Butler v. State, 608 So.2d 773, 774-75 (Ala.Cr.App.1992) (wherein a list of expenses was included in the trial court’s order to enumerate the expenses, damages, or economic loss to the victims of murder in that case.) Therefore, the trial court’s order of restitution was erroneous and is due to be vacated.
ORDER OF RESTITUTION VACATED; JUDGMENT OF CONVICTION AND SENTENCE AFFIRMED.
All the Judges concur, except TAYLOR, J., who dissents without opinion.